UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JONATHAN D. REED,<br><br>          Petitioner,<br><br>  v.<br><br>TIMOTHY WENGLER, Warden, and LAWRENCE G. WASDEN, Attorney General,<br><br>        Respondents. | Case No. 1:12-cv-00080-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Jonathan D. Reed ("Petitioner"), a person in the legal custody of the Idaho Department of Correction, seeks a Writ of Habeas Corpus. (Dkt. 3.) Respondents Timothy Wengler and Lawrence G. Wasden ("Respondent") filed an Answer to the Petition and a Brief in Support of Dismissal. (Dkt. 10.) Petitioner filed a Reply; and Respondent, a Sur-Reply. (Dkts. 18, 19.) The Petition is now fully briefed. Having reviewed the record, including the state court record in this matter, and having considered the arguments of the parties, the Court concludes that oral argument is unnecessary. Accordingly, the Court enters the following Order denying relief.

## BACKGROUND

Petitioner alleges that, in 2007, he was a full-time student at Boise State University. He was also going through a divorce and working full-time. Petitioner alleges

that, after his separation, he was in the process of moving, and he inadvertently neglected to maintain his sex offender registration. He voluntarily turned himself in to authorities for this offense. (Traverse Reply, pp. 1-2.)

Petitioner was charged with failure to register as a sex offender, and he was represented by a series of attorney, the first being a public defender, Richard Toothman. (State's Lodging A-1.) Before the preliminary hearing, the prosecutor offered to recommend a sentence of one year fixed with four years indeterminate if Petitioner would plead guilty to that charge. (State's Lodging B-3.) Petitioner alleges that Mr. Toothman did not convey the offer to him. After the preliminary hearing, the prosecutor withdrew the offer and amended the Information to include a persistent violator sentencing enhancement. (State's Lodgings B-1, B-2, A-1.)

Petitioner later pleaded guilty to both charges. (State's Lodgings A-2, B-1, pp. 4, 30.) The state district court sentenced Petitioner to three years fixed, with 22 years indeterminate, but retained jurisdiction for six months, to permit Petitioner to demonstrate that he should be granted probation. (State's Lodgings A-1, B-1, B-3.) At the end of the six-month period, the Court relinquished jurisdiction and imposed the prison sentence. (State's Lodgings A-1, B-1.)

Petitioner filed a pro se petition for post-conviction relief, and the state district court appointed counsel for Petitioner. (State's Lodging B-1.) Among other claims, Petitioner alleged that his trial counsel was ineffective for failing to inform him of the original plea offer before it was withdrawn and before the Information was amended to

include the persistent violator charge. (State's Lodging B-1, pp. 4-9.)

At the post-conviction evidentiary hearing, Petitioner testified that, during his first meeting with Mr. Toothman, Petitioner explained to Mr. Toothman that he wished to go back to college. Mr. Toothman replied that many times the State would ask for probation for a failure-to-register charge, and, sometimes, the court would dismiss the charge. Petitioner then told Mr. Toothman, "Let's try for one of those two options." (State's Lodging B-2, pp. 20-21.) Petitioner stated that this explanation ended the conversation, and that Mr. Toothman did not tell him that a plea offer had been made, or that the next step was to go directly to the preliminary hearing. (*Id.*, pp. 20-24.) Petitioner testified that he had no other contact with Mr. Toothman other than this two-to-three-minute meeting before the preliminary hearing. (*Id.*, p.24.)

Petitioner testified that, after the preliminary hearing, his next public defender, Eric Rolfsen, spoke to him only three times and informed him that the State had offered one-plus-four years, but that the offer was no longer on the table because Petitioner had decided to go through with the preliminary hearing. (State's Lodging B-2, pp. 24-25, 36.) Petitioner testified that he told Rolfsen he would like to agree to the offer, and Rolfsen said that he would try to go to the prosecutor to see if they would put the offer back on the table. (*Id.*, pp. 25-26.)

In the post-conviction hearing, the state district court noticed that Petitioner's testimony at the hearing (that he first learned about the plea offer from his second attorney, public defender Eric Rolfsen) appeared to differ from the facts alleged in the

post-conviction petition (that he first learned about the plea offer from his third attorney, private counsel Jared Martens). Particularly, in the post-conviction petition, Petitioner declared, under oath, that *neither* public defender had conveyed the offer:

> *Unaware of he aforementioned plea offer*, the Petitioner hired Jared B. Martens, a private attorney to represent him. Notice of Substitution of counsel was filed on or about February 25, 2008. Mr. Reed expressed a desire to plead guilty to which Mr. Martens inquired as to the rationale to reject the earlier plea offer. *It was then learned* the offer was no longer available. Ada Public Defender's [sic] withheld critical information from the Defendant, which amounts to ineffective assistance of counsel. The proximate result of *their* deficient performance was realized when the Court, on January 8, 2008, granted the State leave to file an Amended Information, Count II, Persistent Violator, I.C. § 19-2514, a charge that carries a potential life sentence. The Defendant had an absolute right to have plead [sic] guilty when he first expressed a desire to do so with his former government appointed attorney's [sic] Messrs. Toothman and Rolfsen.

(State's Lodging B-1, p. 6 (emphasis added).) Another discrepancy was whether Petitioner first saw the written plea offer when he discussed pleading guilty with Mr. Martens, the third attorney, or whether he first saw it when Mr. Martens sent Petitioner discovery materials. (State's Lodging B-2, pp. 28-32.)

When the state district court tried to obtain clarification about this apparent contradiction at the evidentiary hearing so that the court could understand what, exactly, Petitioner was alleging in the Petition, counsel for Petitioner objected, arguing that the state court was "cross-examining" his client. In response to the court's questions, Petitioner testified that he wrote the petition himself, but had help typing it up; he also testified that he swore it was correct when he signed it. (State's Lodging B-2, p. 29.)

**MEMORANDUM DECISION AND ORDER - 4**

Petitioner explained that what he meant in the Petition was that he had learned about the plea offer from Mr. Rolfsen, but had not *seen* the offer *in written form* until Mr. Martens took over representation.

After the hearing, the state district court found that Petitioner's testimony regarding his claim that he had not been informed of the plea agreement by Mr. Toothman was not credible. ((State's Lodging B-1, p. 34.) Particularly, the state district court found that Petitioner's "testimony in court was very inconsistent with his sworn statements in his petition." (*Id*.) Based on the entire record, the state district court also determined that Petitioner's explanations of the inconsistencies between the petition and the evidentiary hearing testimony "made no sense." (State's Lodging B-1, p. 35.)

The court further determined that the two defense attorneys' testimony was credible. (State's Lodging B-1, p. 35-36.) Mr. Toothman, the first public defender, had been a practicing criminal defense lawyer since 1974. (*Id*., p. 35.) Mr. Toothman testified that he met with Petitioner not one, but three times. Mr. Toothman's notes indicated that, on the day of the preliminary hearing, he wrote "J2" then "J2 again, offer, hearing," which meant that he went to the J2 housing area to give Petitioner the discovery, he went upstairs to talk to the prosecutor to see if there was an offer, he went back to J2 to convey the offer, and then he went to the hearing, because the offer was not accepted by Petitioner. (State's Lodgings B-3, B-2, pp. 53-56.) Mr. Toothman indicated that he did not have a present recollection of a conversation with Petitioner about the offer, but that

he was basing his testimony on his notes and on "past recollection recorded by habit and custom." (*Id*., p. 58.)

The second public defender, Mr. Rolfsen, who had been a public defender for over 20 years, testified that his notes indicated that he met with Petitioner at least six times, plus had several phone calls with Petitioner. (State's Lodging B-2, p. 69.) Mr. Rolfsen further testified that he had no specific recollection of discussing the plea offer with Petitioner, but he knew that the State would not make the same offer after the preliminary hearing. (*Id*., p. 62.) Mr. Rolfsen testified that, in the beginning, Petitioner never said that he was willing to accept an offer that included prison time, but indicated he was only interested about an offer for probation; Petitioner said that, if there was no such offer, he was interested in going to trial. (State's Lodging B-2, pp. 61-64.) Mr. Rolfsen testified that, later, Petitioner said he would plead to a prison recommendation, but only if it allowed him to argue for a non-prison recommendation. (*Id*., p. 71.) Mr. Rolfsen testified that the prosecutor rejected all of Petitioner's proposals.

Based on the testimony of the two public defenders about the type of sentence Petitioner said he wanted, the state court found that, contrary to Petitioner's contentions, Petitioner would not have accepted a plea offer containing a prison term prior to the preliminary hearing. (State's Lodgings B-1, p. 10 & C-4, p.5.)

Near the end of the hearing, Petitioner's counsel requested leave to put on evidence that would effectively change Petitioner's claim from one that Mr. Toothman

did *not* communicate the plea offer to him, to a claim that Mr. Toothman *did* extend the plea offer to him, but did not explain it. (State's Lodging B-2, pp. 78-93.) The following colloquy then ensued:

> The Court: Okay. Counsel, I'm going to – I'm going to tell you right now. This post-conviction is not a moving target. The claim was – and he testified [sic]. That's one reason I asked him several questions so I can understand what his claim was. His claim both in the post-conviction as well as on the stand is that Mr. Toothman never communicated the offer. Period. That – you are going to be bound by that. You can't now come back and say, but if he did communicate it, it wasn't adequate because your client said it was never communicated.
>
> Mr. Davis: Well, Your Honor, until the evidence closes, I think that we can argue that the facts have been elicited.
>
> The Court: Then we need to bring all of the people back in because that's not what your client testified to. The evidence – and I'm going to make a factual finding, Mr. Davis, the factual finding is your client's testimony is it was never communicated until Mr. Rolfsen came in and even then he was never shown a sheet. But his testimony was Mr. Toothman never told him, not Mr. Toothman told me, but he didn't adequately explain it to me. He didn't tell me.
>
> Mr. Davis: That is his testimony, Your Honor.
>
> The Court: That's right, and that's what you are stuck with.

State's Lodging B-2, pp. 92-93.)

Because the state district court found Petitioner not credible and found his defense attorneys credible, the state district court concluded that (1) Petitioner had not shown deficient performance because it found that counsel advised him of the offer; and (2) Petitioner had not shown prejudice, because it found he would have rejected a pre-hearing

plea offer containing a prison term. Petitioner's post-conviction petition was denied and dismissed with prejudice. (State's Lodging B-1, p. 38.)

Petitioner filed an appeal of the denial of the post-conviction petition. (State's Lodging C-1.) The Idaho Court of Appeals reviewed the underlying record and the factual findings of the state district court and determined:

> The record clearly indicates that Reed was allowed to argue all of his claims. Reed relied solely on his testimony to support his claims. The district court found Reed's testimony to be inconsistent and not credible. In contrast, the district court found the testimonies of Reed's attorneys to be credible and that Reed was advised of the plea offer. Those credibility determinations will not be disturbed by this Court. Therefore, the record does not demonstrate proof [of] ineffective assistance of counsel by a preponderance of the evidence. The district court did not err in denying Reed's application for post-conviction relief.

(State's Lodging C-4.) The Idaho Supreme Court denied Petitioner's petition for review without comment. (State's Lodging C-7.)

In this federal habeas corpus action, Petitioner brings one claim, that his public defenders failed to relay a settlement offer to him for one year fixed and four years indeterminate, and when he finally learned of the offer, it had been withdrawn, the persistent violator charge was added, and he ended up with a much harsher sentence of three years fixed with 22 years indeterminate.

# REVIEW OF PETITION FOR WRIT OF HABEAS CORPUS

## 1.     Standard of Law

Federal habeas corpus relief may be granted on claims adjudicated on the merits in a state court judgment when the federal court determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act (AEDPA), federal habeas corpus relief is further limited to instances where the state-court adjudication of the merits:

> 1.     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2.     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[1]

When a party contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests: the "contrary to" test and the "unreasonable application" test.

Under the first test, for a decision to be "contrary to" clearly established federal law, the petitioner must show that the state court applied "a rule of law different from the governing law set forth in United States Supreme Court

---

[1]A state court need not "give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011).

precedent, or that the state court confronted a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrived at a result different from the Court's precedent." *Williams v. Taylor*, 529 U.S. 362, 404-06 (2000).

Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1), the petitioner must show that the state court was "unreasonable in applying the governing legal principle to the facts of the case." *Williams*, 529 U.S. at 413. The United States Supreme Court has explained: Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

A federal court cannot grant relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell v. Cone*, 535 U.S. 685, 694 (2002). To warrant habeas corpus relief, a petitioner must show that the challenged state-court ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 786-87 (2011).

In *Richter*, the United States Supreme Court explained that, under §

2254(d), a habeas court (1) "must determine what arguments or theories supported

or . . . could have supported, the state court's decision;" and (2) "then it must ask

whether it is possible fairminded jurists could disagree that those arguments or

theories are inconsistent with the holding in a prior decision of this Court." *Id*. at

786. If fairminded jurists could disagree on the correctness of the state court's

decision, then a federal court cannot grant relief under § 2254(d)(1). *Id*. The

Supreme Court emphasized: "It bears repeating that even a strong case for relief

does not mean the state court's contrary conclusion was unreasonable." *Id*.

(internal citation omitted).

As to the facts, the United States Supreme Court has recently clarified "that

review under § 2254(d)(1) is limited to the record that was before the state court

that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388,

1398 (2011). This means that evidence not presented to the state court may not be

introduced on federal habeas review if a claim was adjudicated on the merits in

state court and if the underlying factual determination of the state court was not

unreasonable. *See Murray v. Schriro*, 745 F.3d 984, 999 (9th Cir. 2014).

When a party contests the reasonableness of the state court's factual

determinations under § 2254(d)(2), the petitioner must show that the state court

decision was based upon factual determinations that were "unreasonable in light of

the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

The United States Court of Appeals for the Ninth Circuit has identified five types of unreasonable factual determinations that result from procedural flaws that occurred in state court proceedings: (1) when state courts fail to make a finding of fact; (2) when courts mistakenly make factual findings under the wrong legal standard; (3) when "the fact-finding process itself is defective," such as when a state court "makes evidentiary findings without holding a hearing"; (4) when courts "plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim; or (5) when "the state court has before it, yet apparently ignores, evidence that supports petitioner's claim." *Taylor v. Maddox*, 366 F.3d. 992, 1000-01 (9th Cir. 2004). State court findings of fact are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

If the state court factual determination was unreasonable, then the federal court is not limited by § 2254(d)(1), but proceeds to a de novo review of the claims, which may include consideration of evidence outside the state court record, subject to the limitations of § 2254(e)(2). *Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014).

The Court will first address several misconceptions upon which Petitioner

relies for his arguments. First, Petitioner's references to standards governing motions to dismiss and motions for summary judgement are inapplicable, as this case is proceeding to judgment based on the petition, answer, traverse, and sur-reply. *See* Rule 4, Rules Governing § 2254 Cases.

Second, because Petitioner's claim is not procedurally defaulted, but was heard on the merits in a comprehensive and substantial manner with adequate evidentiary development in state court, his argument that he should be afforded an evidentiary in federal court pursuant to *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), is based on a mistaken interpretation of the narrow applicability of that case. *Martinez* is concerned only with ineffective assistance of counsel claims that were *never* presented to any court. *Id*. at 1316 ("When an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claim.") Here, Petitioner has had an opportunity to present his claim to three separate courts before presenting it in federal court: the state district court, the Idaho Court of Appeals, and the Idaho Supreme Court. In addition, Petitioner had an aggressive attorney on post-conviction review and was afforded an evidentiary hearing. Therefore, Petitioner has no argument that the merits of his claims were not adequately presented and addressed in state court. *Martinez* does not apply.

**2.      Discussion of Whether Factual Finding was Unreasonable**

Petitioner argues that the Idaho Court of Appeals's findings of fact were unreasonable. (Traverse Reply, p. 4.) Petitioner asserts that he should have been permitted to present additional evidence at the end of the hearing, and that the evidence that *was* presented did not support the state courts' determinations of credibility.

Petitioner argues that the state district court abridged his right to due process by not allowing him to present evidence to meet his burden of proof when it refused to re-open evidence. (*Id.*, p. 5.) This argument is based on the state court's conclusion that Petitioner would not be permitted to bring forward evidence of facts that would contradict his own testimony that the plea offer was never communicated to Petitioner by Mr. Toothman,

Petitioner argues that, pursuant to *People v. Ginther*, 212 N.W. 2d 922 (Mich. 1973), Petitioner's counsel should not have been prevented from presenting additional facts or testimony in support of Petitioner's alternative claim at the evidentiary hearing. Petitioner provides no case law from any jurisdiction showing that the state district court committed a procedural error or even abused its discretion when it did not permit Petitioner to present self-contradictory evidence. In particular, *Ginther*—which held that an indigent defendant who did not have a lawyer to help him move to withdraw his guilty plea on ineffective

assistance of counsel grounds was entitled to have his case remanded for appointment of counsel and an evidentiary hearing—reveals no similar error in Petitioner's proceedings. In state court, Petitioner had the benefit of counsel, was permitted to bring forward witnesses, cross-examined witnesses, testified on his own behalf, was asked additional questions to clarify his testimony, was permitted to bring forward documentary evidence, and otherwise was afforded a full and fair hearing.

At Petitioner's hearing, the court was the factfinder, and it was within the province of the court's authority to make a finding of fact that it was Petitioner's testimony that the plea offer was never communicated to him until he met with Mr. Rolfsen. The court had before it the post-conviction petition, which contained a self-contradictory statement. The court elicited additional testimony from Petitioner so that he could explain the discrepancy. Petitioner did not explain the discrepancy to the court's satisfaction. Additional evidence to show that the offer *was* communicated was irrelevant, because Petitioner had expressly testified that the offer was *not* communicated. The Court finds no case law in its research to support Petitioner's position that he should have been permitted to re-open the case at the end of the hearing to rely upon a new theory that would require the

factfinder to disregard Petitioner's own testimony.[2]

This Court concludes that the Idaho Court of Appeals did not make an unreasonable finding of fact or render the factfinding process defective by disallowing contradictory evidence at the close of the hearing, because the record supports an inference that Petitioner's contradictions were due to untruthfulness rather than mistake, and the state district court not only observed Petitioner's demeanor but asked its own questions to gain clarification to ensure that the court understood Petitioner's factual position.

Petitioner next argues that the state district court "persistently interrupted Mr. Reed's testimony at the evidentiary hearing, over defense counsel's objection" and that "the questioning distorted the fact finding process and amounted to a "cross examination of [his] client." (Dkt. 18, p. 9.) Because the state court was the factfinder in the evidentiary hearing, when contradictions arose, the court asked Petitioner a series of questions to clarify Petitioner's version of the facts. Petitioner has pointed to no law to support his position that the state court acted

---

[2] While post-conviction review is a collateral proceeding with fewer protections than a criminal proceeding, the Court notes that, even in criminal proceedings, the right to present any type of evidence is not absolute. The Sixth and Fourteenth Amendments guarantee criminal defendants a meaningful opportunity to present evidence in support of a complete defense. *Crane v. Kentucky*, 476 U.S. 683, 689-690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984). The right is subject to reasonable restrictions based upon other legitimate interests in the criminal trial process. *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (citations omitted). A defendant does not have the right to present evidence that is "incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 424 (1988).

unreasonably or was in error for attempting to obtain clarification of the facts by asking questions of the petitioner, with his counsel present, during a bench hearing. In addition, Petitioner points to no particular "distortion" that occurred as a result of the questions. Rather, the questions were aimed at, and were successful in, obtaining clarification of Petitioner's factual position.

Petitioner also argues that the court was unreasonably "hard" on Petitioner by asking him questions, but "easy" on Mr. Toothman during the hearing, which was unfair, because Mr. Toothman had no recollection of the representation, but relied solely on a few words written in his case file notes. While that is one inference that may be gleaned from the record, another reasonable inference is that Petitioner came into court with a very specific set of facts in his verified post-conviction petition, and then told a story in court that contradicted the petition, and the court simply wanted to give Petitioner every opportunity to explain the contradiction by asking him a series of questions that may have felt like a "cross-examination."

On the other hand, Mr. Toothman had been practicing criminal law for over 30 years, and was very forthright about the fact that he had no recollection of the case, but he also had a detailed explanation for his sparse notes that showed he had a regular habit of meeting with incarcerated clients. That habit was to show them the discovery from the prosecutor, meet with the prosecutor to determine whether

there was a plea offer, convey the offer to the client, and then attend the preliminary hearing if the plea offer was declined. There was little need for the court to ask further questions of Mr. Toothman, because his testimony was simple and forthright, without internal contradiction. The record reflects that the court's different treatment of each witness was guided by the content of each witness's testimony. No unreasonable fact finding is evident from the record.

Petitioner also argues that Mr. Toothman's credibility was called into question because, when the Ada County Public Defender's Office provided Petitioner with their case file in the Fall of 2009, Mr. Toothman's "case notes" and the preliminary settlement offer sheet were not included in the file. Although the case notes were not provided until a later date, it is clear that Petitioner's third attorney, Mr. Martens, had the written offer during the course of Petitioner's defense, well before the post-conviction action began. Because Petitioner offered no evidence at the post-conviction evidentiary hearing to show what role Mr. Toothman played, if any, in the failure to include the notes and the offer sheet in the Ada County Public Defender's office files, this anomaly by itself did not show that Mr. Toothman lacked credibility.

In any event, the state district court had all of the evidence before it, including the timing of the disclosure, when it determined that the attorneys, rather than Petitioner, were credible. Because Petitioner's evidence was self-

contradictory, and the public defenders' testimony was harmonious, the late disclosure (without more) does not show that the state courts' factfinding was unreasonable.

Somewhat contrarily and without any clear purpose, Petitioner next argues that admission of the offer sheet was an error of state evidentiary law, because it was inadmissible hearsay and not the best evidence. However, Petitioner makes no argument tying together the allegedly wrongful admission of the offer sheet and any finding of fact. The content of the offer sheet was not contested; rather, the only facts at issue were whether and when the offer had been conveyed to Petitioner. The fact that the offer sheet was admitted made no difference to the outcome of the post-conviction action; if anything, it aided Petitioner's case, because it proved that the State *had* made an offer prior to the preliminary hearing, and it aided Petitioner in attempting to explain the discrepancy between his testimony (Mr. Rolfsen merely explained the offer but did not show it) and his petition (Mr. Martens showed him the offer for the first time), although his attempt was unsuccessful.

Petitioner next argues that the state district court overlooked the fact that Petitioner promptly dismissed his public defenders (Mr. Toothman and Mr. Rolfsen) when he learned from Mr. Rolfsen that the state's plea offer had been withdrawn. However, Petitioner produced no evidence at the hearing that

Petitioner "promptly dismissed" his public defenders for that reason, even though both Petitioner and Mr. Martens, the third attorney, could have testified to that point. (*See* State's Exhibit B-2, pp. 75-77.) As the state district court found, the petition for post-conviction relief does *not* support the argument that Petitioner promptly dismissed his public defenders for the reason *that he learned from Mr. Rolfsen that a plea had been offered to Mr. Toothman but not conveyed to Petitioner*; rather, the petition very clearly implies that there was some other reason for hiring the third attorney, such as the filing of the persistent violator charge—"*Unaware of the aforementioned plea offer*, the Petitioner hired Jared B. Martens, a private attorney[,] to represent him." (State's Lodging B-1, p. 3 (emphasis added).) No unreasonable factfinding is evident from the record on this point; rather, the state district court's observation that Petitioner's testimony "made no sense" seems well-taken.

In summary, the Court concludes that Petitioner has not pointed to any of the *Taylor v. Maddox* types of unreasonable factfinding in the record of his case: (1) the state court *did* make findings of fact (Petitioner simply disagrees with them); (2) the state court did *not* mistakenly make factual findings under the wrong legal standard; (3) the fact-finding process itself was *not* defective, because the court held an evidentiary hearing where Petitioner had counsel, and there is no law prohibiting the court from asking the petitioner questions about the facts during a

bench hearing; (4) the state court did *not* plainly misapprehend or misstate the record in making its findings (the record sometimes supports two inferences, but the state district court had the opportunity to observe the demeanor of the witnesses to decide which inference to adopt); and (5) the state court did *not* ignore evidence it had before it that supported petitioner's claim (rather, Petitioner simply lost the credibility battle). *See Taylor v. Maddox*, 366 F.3d. at 1000-01.

The record supports a finding that, not only were the first attorney's testimony and the second attorney's testimony noncontradictory (both internally and with each other), Petitioner's testimony and his petition were internally contradictory. Further tipping the scale in favor of the attorneys' credibility was the fact that Petitioner admitted on the stand that he had written his third attorney a letter thanking him for the work he did and "apologizing for the minimization that [he] was speaking about when [he] was interviewed by the presentence investigator." (State's Lodging B-2, p. 46.) That statement served as an admission that Petitioner had not been forthright when he was interviewed by the presentence investigator, something which negatively impacted Petitioner's overall credibility at the post-conviction hearing.

Based on the entire record, the Court concludes that Petitioner has not borne the burden of showing that the state court findings of fact—either the trial court level or the appellate level—were unreasonable in light of the record before

it.

### 3. Discussion of Whether the Legal Determination was Unreasonable

Petitioner also argues that the state court decision was an unreasonable

application of the law. The Idaho Court of Appeals correctly identified *Strickland*

*v. Washington,* 466 U.S. 668 (1984), as governing case law from the United States

Supreme Court.[3] A defendant challenging his counsel's performance as ineffective

must meet a two-prong test. *See id*. First, the defendant must show that counsel's

performance was so deficient that he failed to function as the "counsel" guaranteed

by the Sixth Amendment. *Id*. at 691-92. The second prong requires that the

defendant show that the deficient performance prejudiced the defense. *Id.* Unless

both showings are made, a defendant is not entitled to relief. *Id.*

When undertaking a analysis of counsel's performance using the "doubly-

deferential judicial review that applies to a *Strickland* claim under the

§ 2254(d)(1) standard," *Knowles v. Mirzayance*, 536 U.S. 111, 123 (2009), the

---

[3] While there was no new case law from the United States Supreme Court at the time the Idaho Supreme Court denied the petition for review in January 2012, the United States Supreme Court did publish several new cases about plea offers in March 2012. They are not applicable to Petitioner's habeas corpus case, but, even if they could be applied, they do not show that Petitioner's facts warrant relief, because the state courts found that Petitioner did not meet his burden of proof to show that the plea offer was not, in fact, communicated to Petitioner. Hence, the new case law does not affect the Court's analysis here.  *See Missouri v. Frye*, 132 S.Ct. 1399 (2012) (defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused, and counsel was deficient in failing to communicate to defendant the prosecutor's written plea offer before it expired); *Lafler v. Cooper*, 132 S.Ct. 1376 (2012) (the petitioner was prejudiced by counsel's deficient performance in advising petitioner to reject the plea offer and go to trial).

federal habeas court must determine which arguments could have supported the state courts' decisions. *Richter*, 131 S.Ct. at 786.  Here, based on the findings of fact of the state courts, the record supports a finding that Petitioner's first counsel, Mr. Toothman, a very experienced trial attorney, had a custom and habit of how he handled his criminal cases. As Mr. Toothman's notes reflect, he received an offer for Petitioner from the prosecutor—an offer that contained prison time. The record supports the finding that Mr. Toothman communicated the offer to Petitioner, along with information that "a lot of times the State will request probation" or sometimes the court will "actually dismiss the charge." (State's Lodging B-2, p. 20.) Petitioner rejected the offer because it contained prison time, and he told Mr. Toothman that he wanted to try for either probation or dismissal of the charge. (*Id.*, p. 21.) Petitioner then went to the preliminary hearing, and the offer was withdrawn. At that time, Petitioner did not know that a persistent violator charge would be filed against him. *(Id.*, p. 42.)

When a second very experienced public defender, Mr. Rolfsen, took over the case, Petitioner again said that he was interested only in probation or dismissal. The record supports the finding that Petitioner was willing to go to trial rather than agree to prison time. Later, when Petitioner began to reconsider his options, he asked his second counsel to approach the prosecutor with a proposal for a plea offer for a recommendation of prison time, with an opportunity to argue that no

prison time should be included in the sentence.

When the prosecutor declined to make any offer and Petitioner learned that a persistent violator charge was going to be added to the Information, Petitioner then hired his third counsel. Petitioner's third counsel asked Petitioner why he had rejected the original plea offer. The record supports a finding that Petitioner had rejected the original offer because it contained prison time.

In the post-conviction review hearing and in his federal Habeas Corpus Petition, Petitioner alleged as true that his first counsel never conveyed an offer to him, and that his second counsel verbally informed him of the then-expired offer. In the petition for post-conviction relief, Petitioner had alleged as true that neither his first nor his second counsel ever conveyed an offer to him. Noting this discrepancy, among others, the state district court held Petitioner to the facts he alleged as true in his post-conviction petition, and did not permit him to later assert that his own facts were untrue. Few reasonable jurists would do otherwise. The state court record supports the district court's conclusion that Petitioner did not show that his counsel had performed deficiently or that Petitioner suffered prejudice under the *Strickland* standard, and the record supports the Idaho Court of Appeals's decision to affirm.

**4.     Conclusion**

Even though some of the evidence in the paper record of this case can be construed to support Petitioner's testimonial version of events, neither the Idaho Court of Appeals nor this Court had the opportunity to observe the demeanor of Petitioner or his three counsel as they testified at the hearing. Because the American system of justice is based upon the truthfulness of witnesses and the ability of the factfinder to discern the truth from among competing versions, both post-conviction appellate review and federal habeas corpus review have a built-in principle of deference to the factfinder who both saw and heard the witnesses. This Court cannot re-determine the facts, and, on this record, will not do so. The Court concludes that the state court record supports the version of the facts found by the state district court and relied upon by the Idaho Court of Appeals, and the record supports the application of the law to the facts and the conclusion that *Strickland* was not violated. Therefore, the Idaho Court of Appeals's decision is not an unreasonable application of *Strickland* under the doubly-deferential standard explained in *Richter* and *Mirzayance*. Because fairminded jurists could disagree on the correctness of the Idaho Court of Appeals's decision, or, stated another way, because not every fairminded jurist would agree with Petitioner that *Strickland* was violated under the facts contained in this record, the Court cannot grant relief under § 2254(d)(1).

# CERTIFICATE OF APPEALABILITY

In the event Petitioner files a notice of appeal from the Order and Judgment in this case, the Court now evaluates the claims within the Petition for suitability for issuance of a certificate of appealability (COA), which is required before a habeas corpus appeal can proceed. 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); Rule 11(a), Rules Governing Section 2254 Cases.

A COA will issue only when a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has explained that, under this standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further*." Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citation and punctuation omitted).

When a court has dismissed the petition or claim on the merits, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. The COA standard "requires an overview of the claims in the habeas petition and a general assessment of their merits," but a court need not determine that the petitioner would prevail on appeal. *Miller-El*, 537 U.S. at 336.

Here, the Court has denied Petitioner's claim on the merits. The Court finds that additional briefing on the COA is not necessary. Having reviewed the record again, the Court concludes that reasonable jurists would not find debatable the Court's decision on the merits of the claims raised in the Petition and that the issues presented are not adequate to deserve encouragement to proceed further. As a result, the Court declines to grant a COA on any issue or claim in this action.

If he wishes to proceed to the United States Court of Appeals for the Ninth Circuit, Petitioner must file a notice of appeal in this Court, and also file a motion for COA in the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b), **within thirty (30) days after entry of this Order**.

## ORDER

**IT IS ORDERED:**

1. The Petition for Writ of Habeas Corpus is DENIED, and this entire action is DISMISSED with prejudice.

2. The Court will not grant a Certificate of Appealability in this case. If Petitioner chooses to file a notice of appeal, the Clerk of Court is ordered to forward a copy of this Order, the record in this case, and Petitioner's notice of appeal, to the United States Court of Appeals for the Ninth Circuit.



DATED:  **July 15, 2014**

Honorable B. Lynn Winmill
Chief U. S. District Judge